## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

**SARA BOYSEN, *et al.*,**

　　　　Plaintiffs,

Case No. 6:23-cv-01229-AA

　　　　v.

**OPINION & ORDER**

**PEACEHEALTH, *et al.*,**

　　　　Defendants.

_____

　　　This matter comes before the Court on PeaceHealth, Liz Dunne, Doug Koekkoek, and Todd Salnas's (collectively "PeaceHealth" or "PeaceHealth Defendants") Motion to Dismiss, ECF No. 25, and on (former) Oregon State Governor Kate Brown and (former) Director of Oregon Health Authority Patrick Allen's (collectively "State Defendants") Motion to Dismiss. ECF No. 12. State Defendants also move to join the PeaceHealth motion to dismiss. ECF No. 26. For the reasons explained, the Motion to Join, ECF No. 26 is GRANTED. PeaceHealth and State

Defendants' Motions to Dismiss, ECF Nos. 12, 25, are GRANTED.   This case is
DISMISSED with prejudice.

## BACKGROUND

### I.    Factual Background

All background is drawn from the allegations in the Complaint, along with
judicially noticed facts pursuant to Federal Rule of Evidence 201(b): "[t]he court may
judicially notice a fact that is not subject to reasonable dispute because it: (1) is
generally known within the trial court's territorial jurisdiction; or (2) can be
accurately and readily determined from sources whose accuracy cannot be reasonably
questioned."

The global tribulation caused by the Covid-19 pandemic, which broke out in
2020, is now well-known.   This case, filed in August 2023, arises from Defendants'
mandates that healthcare workers be vaccinated against Covid-19 or obtain a medical
or religious exemption.   Compl. ¶¶ 19, 230.   Plaintiffs are former healthcare workers
suing their employer, PeaceHealth, a licensed general hospital provider, and three
PeaceHealth executives: Liz Dunne, Todd Salnas, and Doug Koekkoek.   Compl. ¶¶
32-35, 231.   Plaintiffs also name as Defendants then-acting Oregon governor Kate
Brown and Patrick Allen, former director of the Oregon Health Authority, for issuing
orders mandating vaccination.   *Id*. ¶¶ 35.1-35.2.

The crux of Plaintiffs' claim is that the "Pfizer-BioNTech COVID-19 Vaccine"
("Pfizer Vaccine") is not a vaccine.   Rather, it is an investigational medical product
legally distinct from a vaccine.   *Id*. ¶¶ 37, 287.   Essentially, Plaintiffs maintain that

the Pfizer Vaccine was first made available by the federal government through the emergency authorization process, rather than through a commercial license to pharmaceutical companies to market it for its intended use, and therefore, has no indication to treat, cure, or prevent any disease. *Id*. ¶¶ 81, 88, 94, 259, 489, 533. According to Plaintiffs, because the Pfizer Vaccine is not really a vaccine, but instead medical treatment, Plaintiffs have a federally secured right to refuse it without losing their employment benefits. *Id*. ¶ 37.

Plaintiffs allege that, on August 5, 2021, "[d]uring the height of the pandemic, when hospitalization rates soared, and SARS-CoV-2 variants abounded," PeaceHealth implemented a policy requiring its caregivers to be fully vaccinated against COVID-19 or have an approved medical or religious exception from the vaccine. *Id*. ¶¶ 21, 262. Later, on August 25, 2021, the Oregon Health Authority ("OHA") issued a rule implementing similar statewide orders requiring that all health state licensed healthcare workers either receive a Covid-19 vaccine or obtain an approved medical or religious exemption. *Id*. ¶ 261; Ex. D.

When Plaintiffs refused to receive a vaccination, obtain a medical exception, or provide a religious exception, PeaceHealth presumably terminated Plaintiffs. *Id*. ¶¶ 31.1-31.12. Plaintiffs contend that all Defendants violated their constitutional and international treaty rights, federal statutory rights, and that Defendants breached a contract and committed various state torts in connection with their "unlawful, malicious, unequal and contractually violative COVID-19 investigational drug

mandate[s]." *Id.* at 4.  Both State Defendants and PeaceHealth move to dismiss Plaintiffs' Complaint in its entirety.

## II.    Emergency Use Authorization and the Pfizer Vaccine

The Emergency Use Authorization ("EUA") authority allows the Food and Drug Administration ("FDA") to help strengthen the nation's public health protections against threats including infectious diseases, by facilitating the availability and use of medical countermeasures needed during public health emergencies.  Compl. Ex. C at 11.[1]  Accordingly, the Health and Human Services ("HHS") Secretary declared that circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic, pursuant to section 564 of the [Food, Drug, and Cosmetic] Act, effective March 27, 2020.  *Id.*[2]

As described in text in official government websites, hyperlinked in attachments to Plaintiffs' Complaint, for an EUA to be issued for a vaccine, the manufacturer of the vaccine must undergo a rigorous development process that

---

[1]    The Court incorporates by reference, set forth in Exhibit C attached to Plaintiffs' Complaint, hyperlinks to the FDA's official government website: "Food and Drug Administration: Emergency Use Authorization – About Emergency Use Authorizations (EUAs)," available at https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization).

[2]    *See* "Coronavirus Disease 2019 (COVID-19) EUA Information, "Detailed Information for all COVID-19 EUAs, including authorizations and fact sheets, COVID-19 EUAs for Vaccines," available at https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization#vaccines.

includes tens of thousands of study participants to generate non-clinical, clinical, and manufacturing information needed by FDA for the agency to determine whether the known and potential benefits outweigh the known and potential risks of a vaccine for the prevention of COVID-19. *Id*.[3]

Ultimately, after Pfizer-BioNTech received Emergency Use Authorization for its Covid-19 vaccine in December 2020. *See* Compl. ¶ 108 n. 25 (citing ACIP, Morbidity and Mortality Weekly Report, "Use of Pfizer-BioNTech COVID-19 Vaccine in Persons Aged ≥ 16 Years: Recommendations of the Advisory Committee on Immunization Practices – United States, September 2021", Vol.70, No.38, at 1, available at https://stacks.cdc.gov/view/cdc/109943).

The CDC Advisory Committee on Immunization Practices ("ACIP") reported high rates of efficacy of the Pfizer Vaccine "in preventing symptomatic, laboratory-confirmed Covid-19." *Id*. at 2. In fact, the ACIP report refers to the Pfizer Vaccine as a "vaccine" and discusses its success and efficacy for immunization during the eight months it was offered under the EUA. *Id*. at 1-5. The report states that evidence supports the use of Pfizer Vaccine, "and that the desirable effects of disease prevention via vaccination with the [Pfizer] vaccine" are large and outweigh the potential harms. *Id*. at 4. As of September 22, 2021, the report then announced that the Pfizer Vaccine had been fully approved:

> In summary, after 8 months of use under an FDA EUA and ACIP interim recommendation, the Pfizer-BioNTech COVID-19 vaccine,

---

[3] *See id*., "Emergency Use Authorizations for Vaccines Explained" available at https://www.fda.gov/vaccines-blood-biologics/vaccines/emergency-use-authorization-vaccines-explained.

Comirnaty, now has full FDA approval and is recommended by ACIP for use in persons aged ≥16 years in the United States. ***Comirnaty has the same formulation and can be used interchangeably with the Pfizer-BioNTech COVID-19 vaccine*** used under EUA without presenting any safety or effectiveness concerns.

*Id*. *See also Johnson v. Brown*, 567 F. Supp. 3d 1230, 1241 (D. Or. 2021) (setting forth detailed history of the Pfizer Vaccine's remarkable journey from early development to full FDA approval); Fed. R. Evidence 201(b)(1) (permitting he judicial notice of fact that not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction).

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss shall be granted where the plaintiff fails to state a claim upon which relief can be granted. "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted). Review of a motion to dismiss is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice" along with any "writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted; second brackets in original). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Dismissal with prejudice is appropriate when no amendment can cure a deficient complaint. *Hernandez v. Fed. Home Loan Mortg. Corp.*, 663 F. App'x 518, 520 (9th Cir. 2016).

## DISCUSSION

Plaintiffs assert eight claims against the PeaceHealth Defendants: five variations of claims under 42 U.S.C. § 1983, a breach of contract claim, an intentional infliction of emotional distress claim, and an "Implied Private Right of Action" claim under 21 U.S.C. §360bbb-3. Plaintiffs maintain the same claims, except the breach of contract claim, against State Defendants. As supplemental authority, Plaintiffs point to *Health Freedom Def. Fund, Inc ("Health Freedom"). v. Carvalho*, 104 F.4th 715 (9th Cir. 2024), for the proposition that the Court must accept as true Plaintiffs' allegation that the Pfizer Vaccine is not a vaccine to prevent COVID-19, but rather an investigational medical product distinguishable from a vaccine, Compl. ¶¶ 287, 463, implicating an alleged fundamental right to refuse medical treatment.

## I.    Claims Against Brown and Allen

### A.    *Official Capacity Suit for Damages*

Plaintiffs bring claims against the former Governor and former OHA director in the personal and official capacities.  Claims against state officials, in their official capacities, are considered claims against the state.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).  The Supreme Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.  *See, e.g., Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945).

Plaintiffs do not seek prospective relief for constitutional violations, thus, the exception announced in *Ex Parte Young*, 209 U.S. 123 (1908), does not apply.  They seek only damages.  Compl. at 137.  To the extent that Plaintiffs seek damages against state Defendants in their official capacities, those claims are barred by the Eleventh Amendment.  *Johnson v. Kotek*, No. 22-35624, 2024 WL 747022, at *2 (9th Cir. Feb. 23, 2024) (citing *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016).

### B.    *Individual Capacity - Federal Claims Against Brown and Allen (Step One – Qualified Immunity Analysis)*

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535, (1981) (overruled on other grounds).  Defendants in a Section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Id.* at 232. Each of the Plaintiffs' federal claims will be examined.

### 1. Standard of Review

Before the Court analyzes whether Plaintiffs have stated a claim on their allegations of constitutional violations, it is necessary to determine the standard of review. Plaintiffs are not alleging that they are a suspect class, thus the Court must establish whether a fundamental right is at issue. Plaintiffs assert that rational basis standard does not apply, because, under an EUA, a vaccine is not a licensed vaccine, and implicates a higher standard of review.

Plaintiffs contend that the Court must accept as true that all drugs issued under EUA have "no legal indication to treat, cure, or prevent any known disease," and therefore, by legal definition, a vaccine issued under an EUA is not *legally a vaccine*, but rather, investigational medical treatment, the use of which cannot be mandated by a state actor. ECF No. 33 at 2; Compl. ¶¶ 81, 88, 259, 463, 489, 533. Accordingly, Plaintiffs assert that they have a federally secured right to refuse a non-vaccine without loss of continued employment. *See e.g.,* Compl. ¶¶ 81-96.

Plaintiffs provide as authority *Health Freedom,* 104 F.4th 715. In *Health Freedom*, the plaintiffs challenged the defendant school district's vaccine mandate.

The *Health Freedom* plaintiffs also alleged that the Covid-19 vaccine was not a vaccine, because it was "designed to reduce symptoms . . . rather than to prevent transmission and infection." *Id*. at 725. In the plaintiffs' view, the Covid-19 vaccine was not a "traditional vaccine," the mandate of which has historically been subject to rational basis review, and that it was medical treatment, refusal of which implicates a fundamental right. *Id*. at 720.

The Ninth Circuit agreed with the *Health Freedom* plaintiffs that, when uncontradicted by judicially noticeable facts, their allegations must be taken as true. *Id*. at 725. The appellate court determined that the district court below had erred when it held that, even if the court accepted as true the plaintiffs' allegations that the Covid-19 vaccine was medical treatment not preventing the spread of the virus, the vaccine had other features aimed at protecting against the virus, thus the defendant school district's mandate was rooted in a legitimate government interest and survived rational basis review under *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). In so holding, the district court explained that *Jacobson* does not *require* that a vaccine have the specific purpose of preventing disease. *Health Freedom*, 104 F.4th at 725.

Looking at *Jacobson*, the Supreme Court upheld a challenge to a state law mandating vaccination during a smallpox pandemic. The court applied a standard akin to rational basis review, balancing an individual's liberty interest in declining

an unwanted vaccine against the State's interest in preventing the disease.[4]  197 U.S. at 38.

In deciding *Health Freedom*, The Ninth Circuit determined that *Jacobson* "does not directly control based on [plaintiffs'] allegations."  104 F.4th at 724.  The Ninth Circuit distilled from *Jacobson* that the "principle of vaccination" is "to prevent the spread" of smallpox.  *Health Freedom*, 104 F.4th at 724 (citing *Jacobson,* 197 U.S. at 31-32).  The *Health Freedom* plaintiffs alleged that a "traditional vaccine" must provide immunity and "prevent the spread" of Covid-19, and that the Covid-19 vaccine was "medical treatment" that "mitigates symptoms," but does not "prevent the spread."  *Id*. at 720, 725.

Thus, the Ninth Circuit determined that the *Health Freedom* plaintiffs had presented a different government interest—mitigating symptoms—distinct from the interest in "preventing" infection which the Ninth Circuit identified as the principle of vaccination in *Jacobson*.  *Id*. at 725.  Accordingly, the Ninth Circuit held that the district court wrongly applied *Jacobson* to the plaintiffs' substantive due process claim.

However, the Ninth Circuit explained that the nature of its holding was "preliminary," and that "on a more developed factual record" it would not prejudge whether the plaintiffs' allegations would prove true.  *Id*. at 725.  The court noted that

---

[4]     In addition to "preventing" smallpox, *Jacobson* also described a vaccine as a means to "eradicate" smallpox, 197 U.S. at 27; "meet and suppress the evils of smallpox," *id*. at 30-31; "stamp out the disease of smallpox," *id*. at 31; "prevent[] the transmission and spread [of smallpox]," *id*; and "render [smallpox] less dangerous to those who contract it." *Id* at 34.

the defendant school district had only provided "a CDC publication that says 'COVID-19 vaccines are safe and effective.' But 'safe and effective' for what?" the court asked. *Id*. While it was *implied* that the Covid-19 vaccine was aimed at preventing COVID-19, the Ninth Circuit found that the record did not contain "judicially noticeable facts that prove this." *Id*.

Here, the record is replete with judicially noticeable facts that Pfizer-BioNTech COVID-19 vaccine is a vaccine—as that term is used in *Jacobson*—"as a preventative" of Covid-19. 197 U.S. at 24. First, the principal chapter of regulations governing EUAs to which Plaintiffs cite states that: (1) EUA drugs are only authorized if they "may be effective in diagnosing, treating, or preventing . . . [a] disease or condition," 21 U.S.C. § 360bbb-3(c)(2)(A)(i); and that (2) EUA drugs "shall not be considered to constitute a clinical investigation," 21 U.S.C. § 360bbb-3(k). This squarely contradicts Plaintiffs' allegation that vaccines that receive approval under an EUA are not, as a matter of law, true vaccines aimed at treating or preventing disease.

Likewise, Plaintiffs' Complaint attaches as Exhibit C a "Fact Sheet for Healthcare Providers Administering Vaccine ("EUA Fact Sheet")" subtitled "Emergency Use Authorization (EUA) of the Pfizer-Biontech Covid-19 Vaccine *to Prevent Coronavirus Disease 2019 (Covid-19)*. Compl., Ex. C at 1. The Fact Sheet states that "The U.S. Food and Drug Administration (FDA) has issued an Emergency Use Authorization (EUA) to permit the emergency use of the unapproved product, Pfizer-BioNTech COVID-19 Vaccine, *for active immunization to prevent COVID-19* in individuals 16 years of age and older. *Id*. Plaintiffs' Complaint references the

EUA Fact Sheet sixteen times.  Compl. ¶¶ 108, 224-A, 225, 281, 282, 317-G, 327, 392, 394, 493, 528.

Moreover, attached to Plaintiffs' Complaint is Exhibit D, the Oregon Health Authority's Public Health Division Temporary Administrative Order, PH 38-2021, which includes a statement of need and justification for the mandate that healthcare providers must be vaccinated or have obtained an exception to vaccination.  Compl., Ex. D.  The Order covers the time period complained of by Plaintiffs, where they allege that only the EAU doses were available.  The Order states that the vaccination "***helps to prevent and slow the spread of COVID-19.***"  *Id*. at 3.  The text of the rule, set forth in the order, states that "Being vaccinated, is therefore ***critical to prevent spread of [the] Delta [variant of COVID-19].***"

Plaintiffs' Exhibit D also cites to a host of top governmental and peer-reviewed scientific sources relied upon by OHA, which, on the whole, are in accord that that the Pfizer Vaccine of which Plaintiffs complain was indeed a vaccine effective in immunizing against infection of Covid-19.  *Id*. at 2-3.

The Court notes that Plaintiffs have plucked out text from regulations to support their claim that the Pzizer Vaccine is not a vaccine.  But the Court in *Jacobson* did not look to the text of a mandate, or any licensing label put on the smallpox vaccine to determine whether it was a vaccine that prevents smallpox.  To find that the vaccination mandate was aimed at controlling the disease, the court took "judicial notice of the fact [such was] the common belief of the people of the state . . . as well as [ ] most members of the medical profession . . . our state, and in most

civilized nations for generations." 197 U.S. at 34. And that, therefore, the "legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases." 197 U.S. at 34-35.

The record flatly contradicts and renders implausible Plaintiffs theory that the Pfizer Vaccine was investigational only, and not really a vaccine. "What everybody knows the court must know . . . that an opposite theory accords with the common belief, and is maintained by high medical authority. We must assume that, when the statute in question was passed, the legislature . . . was not unaware of these opposing theories, and was compelled, of necessity, to choose between them. *Jacobson*, 197 U.S. at 30. Accordingly, the Court finds that Plaintiffs have not plausibly alleged that the Pfizer Vaccine is anything other than a vaccine. Rational basis review under *Jacobson* applies.

### 2.    *U.S.C. § 1983 – Unlawful Investigational Drug Use*

In Count One, Plaintiffs refer to 21 U.S.C. § 360bbb-3, 45 C.F.R. Part 46, the Belmont Report, Article VI of the International Covenant on Civil and Political Rights ("ICCPR") Treaty, 10 U.S.C. § 980, Federal Wide Assurance, and the CDC COVID-19 Vaccination Program Provider Agreement. Compl. at 130.

The Plaintiffs fail to show that any of the federal statutes, regulations, reports or international treaties they cite in their Complaint apply. Plaintiffs also fail to demonstrate that any of those rules or reports contain a private cause of action that available against state Defendants in federal court.

### a.    **Private Right of Action Under 21 U.S.C. § 360bbb-3.**

As is relevant here, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii), which governs emergency use authorization of medication, requires that the Secretary of the U.S. Dept. of Health and Human Services establish:

> Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—
>
> (I) that the Secretary has authorized the emergency use of the product;
>
> (II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and
>
> (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

This statute does not apply to state Defendants. Rather, it directs the Secretary of the U.S. Department of Health and Human Services' actions. Further, Plaintiffs do not allege that the State Defendants were (1) required to provide them with any information that was mandated by the statute and (2) that state Defendants did not so provide it. To the extent Plaintiffs assert a claim under this statute against any Defendant it should be dismissed.[5]

### b.    45 C.F.R. Part 46; The Belmont Report; ICCPR

There is no private right of action under 45 C.F.R. Part 46, the Belmont Report, or the ICCPR. Agency regulations, like 45 C.F.R. Part 46, cannot provide a private right of action where the authorizing statute has not so provided. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (holding that "language in a regulation may

---

[5]    Plaintiffs bring this claim about PeaceHealth in the alternative. Compl. (Count Eight) at 136. The statute does not apply to PeaceHealth.

invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not"). Plaintiffs have failed to point to, and this Court cannot find, a Congressionally given private right of action in any of the authorizing statutes for 45 C.F.R. Part 46. Accordingly, there is no private right of action in 45 C.F.R. Part 46.

Further, courts have not found a private right of action under the Belmont Report, *Kriley v. Nw. Mem'l Healthcare*, 2023 WL 371643, at *2 (7th Cir. Jan. 24, 2023), or the ICCPR which is enforceable in federal courts, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004). Accordingly, Plaintiffs fail to state a claim under this theory.

### c.    10 U.S.C. § 980.

Under 10 U.S.C. § 980(a)(1) "funds appropriated to the Department of Defense may not be used for research involving a human being as an experimental subject unless ... the informed consent of the subject is obtained in advance ..."

Plaintiffs have failed to allege sufficient facts from which they could obtain relief from state Defendants based on this statute. There is no allegation that state Defendants expended Department of Defense funds or were obligated to inform Plaintiffs of information, but failed provide such information. Accordingly, Plaintiffs have failed to state a claim for relief under this theory.

### d.    Federal Wide Assurance

According to the Complaint, through Federal Wide Assurance, "an institution commits to the [U.S. Dept. of Health and Human Services] that it will comply with

the requirements in the [U.S. Dept. of Health and Human Services'] Protection of Human Subjects regulations at 45 C.F.R. Part 46." Compl. ¶ 172 n.41.

The Plaintiffs do not meaningfully respond to state Defendants' argument that there is no private right of action for them against state Defendants pursuant to Federal Wide Assurance. *See* MTD at 8-9, ECF No. 12. State Defendants' argument has merit. Accordingly, Plaintiffs have failed to state a claim for relief under this theory.

### e.  Vaccination Program Provider Agreement

The Court liberally construes Plaintiffs' allegations as asserting that state Defendants were required to abide by the Covid-19 Vaccination Program Provider Agreement to distribute proper vaccines—not experimental drugs under an EUA. Compl. ¶¶ 207-213. The contention that the Pfizer Vaccine was not a vaccine has been addressed above. This claim fails.

### 3.  *42 U.S.C. § 1983 – Unconstitutional Conditions Doctrine*

Count Two asserts that Defendants' vaccination requirements violated the unconstitutional conditions doctrine because the Defendants pressured Plaintiffs to "barter away [their] li[ves] or [their] freedom, or [their] substantial rights." Compl. ¶ 578. This allegation does not, however, implicate the unconstitutional conditions doctrine, which "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgm't Dist.*, 570 U.S. 595, 604 (2013).

Plaintiffs Complaint alleges that they are former employees of PeaceHealth, a private employer. Compl. ¶¶ 31.1-31.13. Accordingly, they fail to plead sufficient facts to allege that a government benefit has been denied. Plaintiffs do not allege that their wages were government benefits. Plaintiffs' unconstitutional conditions doctrine claim must be dismissed. *See Antunes v. Rector & Visitors of Univ. of Va.*, 627 F. Supp. 3d 553, 566 (W.D. Va. 2022) (University's COVID-19 vaccine mandate challenger failed to allege violation of unconstitutional conditions doctrine because no government benefit was at issue).

### 4.    42 U.S.C. § 1983 – Fourteenth Amendment, Equal Protection

The Equal Protection Clause provides that, "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "The Equal Protection Clause ensures that 'all persons similarly situated should be treated alike.'" *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 992 (9th Cir. 2007).

In Count Three, Plaintiffs assert that state Defendants' vaccination policy violates the Fourteenth Amendment's Equal Protection Clause. Compl. ¶ 584. To state a claim, a plaintiff must allege that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). As noted, Plaintiffs do not plead that they belong to a "protected class." *Shavelson v. Haw. Civil Rights Comm'n*, 740 F. App'x 532, 534 (9th Cir. 2018). The only conceivable class

would be persons who declined a Covid-19 vaccination, but this would necessarily fail for two reasons. First, state Defendants vaccination orders applied equally to all healthcare workers—subject to religious or medical exemptions.

Second, and more critically, "unvaccinated individuals do not constitute a suspect class." *See George v. Grossmont Cuyamaca Cmty. College Dist. Bd. of Governors*, No. 22-cv-0424-BAS-DDL, 2022 WL 16722357, at *10 (S.D. Cal. Nov. 4, 2022); Williams, 567 F. Supp. 3d at 1228 ("The Court is fully in agreement with this growing consensus that no fundamental right or suspect classification is implicated by the Oregon vaccine mandates . . . ."); *see also McArthur v. Brabrand,* 610 F. Supp. 3d 822, 839-42 (E.D. Va. 2022) (dismissing the plaintiff's equal protection claim because plaintiff failed to combat "several cases holding that unvaccinated people do not constitute a suspect class"); *Halgren v. City of Naperville*, 577 F. Supp. 700, 753 (N.D. Ill. 2021) ("[the plaintiffs] have not identified any legal support for the notion that vaccination status alone is a traditional suspect (or quasi-suspect) class within the meaning of the Equal Protection Clause.").

Because Plaintiffs do not plead that they are members of a suspect class, their challenge to state Defendants' vaccine orders are subject to rational basis review. Moreover, courts have "no trouble discerning a legitimate state interest in slowing the spread of Covid-19" and have consistently concluded that "vaccine mandates are rationally related to furthering that interest." *Williams*, 567 F. Supp. 3d at 1228; Kheriaty, 2021 WL 4714664, at *7-9.  Plaintiffs fail to state a claim under this theory.

### 5.    42 U.S.C. § 1983 – Fourteenth Amendment, Due Process

In Count Four, Plaintiffs allege that sate Defendants violated both Plaintiffs' "substantive" and "procedural" rights under the "Due Process Clause of the Fourteenth Amendment." Compl. ¶ 588.

As to substantive due process, noted above, the Covid-19 vaccine mandates do not implicate a fundamental right, or a right protected by the substantive due process clause. *Kheriaty v. Regents of the Univ. of California*, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022) (California educator's challenge of the University of California's COVID-19 vaccination policy as a violation of his due process rights did not implicate a fundamental constitutional right); *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (a substantive due process claim "depends on the existence of a fundamental right ingrained in the American legal tradition).

Explained above, *Jacobson* applies, and the rational basis standard of review controls. *Id.* Plaintiffs have not alleged sufficient facts from which to conclude that state Defendants do not have a rational basis for the vaccination orders.

Regarding procedural due process, "A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021). Plaintiffs fail to point to facts, which if believed, would demonstrate that they were denied "adequate procedural protections" from state Defendants. They fail to point to procedural protections that they were due but did not receive. Accordingly, Plaintiffs have failed to state a claim for relief under this theory.

### 5.    42 U.S.C. § 1983 – Spending Clause

In Count Five, Plaintiffs claim that the CDC Covid Vaccination Provider Program, 45 CFR §46.122, 10 U.S.C. § 980, the Fourteenth Amendment, and 21 U.S.C. § 360bbb-3 "clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983" because Spending Clause legislation gave rise to a § 1983 claim where the law "explicitly conferred specific monetary entitlements upon the plaintiffs, and there was no sufficient administrative means of enforcing the requirements." Compl. ¶¶ 383, 399, 589-94.

Plaintiffs fail to allege facts from which to conclude that state Defendants violated the spending clause doctrine. While the Spending Clause places some limits on the federal government's ability to condition use of federal funds, *S. Dakota v. Dole*, 483 U.S. 203, 206 (1987), Plaintiffs fail to point to any authority that it places such limits on state Defendants here. Plaintiffs fail to state a claim under this theory.

### B.    *(Step Two – Qualified Immunity Analysis)*

This opinion will next consider whether state Defendants are entitled to qualified immunity, the second step. *See Pearson,* 555 U.S. at 232 (in analyzing a qualified immunity defense, the Court must determine whether (1) a constitutional right would have been violated on the facts alleged, and (2) the right was clearly established when viewed in the specific context of the case).

For purposes of qualified immunity, "[a] right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna,* 595 U.S. 1, 5 (2021)

(cleaned up).  While case law directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 7-8.

State Defendants are entitled to qualified immunity on all federal claims. Plaintiffs have failed to point to any grounds from which to conclude that state Defendants' orders violated constitutional or statutory rights that were "clearly established when viewed in the specific context of the case." *Id.*  They point to no existing precedent that "placed the statutory or constitutional question[s] beyond debate." *Id.*  Accordingly, claims against state Defendants are dismissed with prejudice.

## I.    Claims Against PeaceHealth

### A.    Claims Under 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.  *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

#### 1.    State Action

The PeaceHealth Defendants contend that the Plaintiffs' federal claims, asserted pursuant to § 1983 should be dismissed because they did not act "under the color of law," that is, as state actors. Before the Court can answer the question of whether the PeaceHealth Defendants acted as a state actor, the Court "must identify the specific conduct" of which the Plaintiffs complain. *Curtis v. PeaceHealth*, No. 3:23-CV-05741-RJB, 2024 WL 248719, at *5 (W.D. Wash. Jan. 23, 2024) (citing *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020).

Plaintiffs allege that PeaceHealth is a participating immunization provider for the Oregon Health Authority's immunization program, and that "[i]mmunization program administration constitutes a public function of the State of Oregon." Compl. ¶¶ 234-35. Plaintiffs maintain that PeaceHealth "willfully volunteered to participate in the CDC Covid-19 Vaccination Provider Program, which constitutes an exclusive public function of the state." *Id*. ¶¶239-40, 252.

However, the Complaint does not allege that PeaceHealth gave Plaintiffs a Covid-19 vaccine or forced Plaintiffs to receive a Covid-19 vaccine from PeaceHealth. Plaintiffs fail to allege that they were injured in any manner by PeaceHealth in its role as an entity that administered COVID-19 vaccines.

Rather, the conduct that Plaintiffs allege to have caused their injury is PeaceHealth's vaccination policy for its employees. *Id*. ¶ 21, 126, 263, 426, 442, 511 (alleging that PeaceHealth vaccination policy led to termination, violation of rights); *see also id*. ¶ 371, 442, 538. 557-H, I (alleging that PeaceHealth unlawfully altered Plaintiffs' employment). Accordingly, Plaintiffs seek to hold the PeaceHealth liable

for their policy that its healthcare workers receive a Covid-19 vaccination before October 15, 2021, subject to medical and religious exemptions, or face being terminated. *Id*.

The relevant inquiry here, then, is whether in PeaceHealth's role as an employer, it became a state actor when it required its employees to receive a Covid-19 vaccine, subject to exemptions, and when it terminated employment for those who did not comply with the vaccine requirements.

Courts may treat the action of a private entity as an act of the state government "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Four general tests may be used in identifying state action: (1) public function; (2) joint action; (3) governmental nexus; and (4) governmental compulsion or coercion. *Rawson* at 747. Compliance with generally applicable laws is not sufficient to convert private conduct into state action under any of the four tests. *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1013 (9th Cir. 2020). Any conduct by which PeaceHealth aligned their vaccination policy with that of the State constitutes compliance with a generally applicable law and accordingly, is not state action. *See Zimmerman v. PeaceHealth*, 2023 WL 7413650, at *13 (W.D. Wash. Nov. 9, 2023) (so explaining). *Zimmerman's* finding is persuasive, and the Court applies here.

### a.    *Public Function*

To satisfy the Public Function test, a plaintiff must demonstrate that the function at issue (here, employment termination) was "both traditionally and exclusively governmental." *Rawson* at 755. Plaintiffs' allegations are difficult to parse, but as explained in their briefing, Plaintiffs point to the State of Oregon's emergency healthcare orders and assert that PeaceHealth's employment policy was in service or "on behalf" of the State's emergency orders. Resp. at 27-29.

Here, the State of Oregon's emergency healthcare orders were issued by the State. And the private enforcement of PeaceHealth's vaccination policy is not akin to limited activities that are traditionally and exclusively performed by the government. *See Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 800 (W.D. Tenn. 2022) (private business's implementation of an employee vaccination policy is not akin to any of those limited activities—for example running a city—that have "traditionally and exclusively" been performed by the government." Accordingly, Plaintiffs have failed to demonstrate that PeaceHealth's enforcement of its vaccination policy for employees was a public function, because they did not demonstrate that the function at issue (employment termination) was "both traditionally and exclusively governmental." *See Rawson* at 755.

### b.    *Joint Action Test / Government Nexus Test*

Joint action exists "where the State has so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Rawson*, 975 F.3d at 748 (internal quotations omitted). (internal quotations omitted). A close nexus exists where there is "a sufficiently close nexus

between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself." *Rawson*, 975 F.3d at 748.

The "joint action" alleged by Plaintiffs concerns PeaceHealth as an administrator of vaccines and does not implicate PeaceHealth as an employer. *See* Resp. at 29 (arguing that the PeaceHealth is a state actor because it "administered the Covid-19 Program on behalf of the State to share in the Program's cash flow benefiting the State and Defendants which required informing individuals of their rights as a condition of the Program's process").

Defendants assert that Plaintiffs have not established joint action, where PeaceHealth's administration of the Covid-19 Vaccination Program was not administered on any Plaintiff—Plaintiffs have not alleged that they have received or even attempted to receive a Covid-19 vaccine, or that PeaceHealth required its employees to be vaccinated by PeaceHealth.

In response, Plaintiffs expound upon their allegations in their briefing, explaining that PeaceHealth "affirm[ed] that they acted on behalf of Governor Brown's (State Policy) when terminating Plaintiffs' access to living wages when refusing the administration of the federally funded property." Resp. at 29.

To the extent Plaintiffs allege that the PeaceHealth Defendants *terminated* Plaintiffs' employment due to Governor Brown's policy, this is belied by the timing of the announcement of PeaceHealth's policy. *See* Compl. ¶ 295), and by Plaintiffs' own allegation that they were terminated because they refused to be injected with an "investigational drug." (*see* Compl. ¶¶ 19, 21). Moreover, Plaintiffs' allegations

suggesting that PeaceHealth acted in alignment with the emergency orders fails to state a claim that PeaceHealth is a state actor, where "compliance with generally applicable laws" is not "sufficient to convert private conduct into state action." *Heineke*, 965 F.3d at 1013. Plaintiffs have not plausibly alleged joint action between PeaceHealth and the State.

### c.    *Government Compulsion Test*

Governmental compulsion in the form of a generally applicable law, without more, is not sufficient to deem a private entity a governmental actor. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 841 (9th Cir. 1999). "Instead, the plaintiff must establish some other nexus sufficient to make it fair to attribute liability to the private entity." *Id.* This Plaintiffs have not done.

Governmental compulsion or coercion may exist where the State "'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Rawson, 975 F.3d at 748.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Even taking Plaintiffs' allegations as true, PeaceHealth's alleged conduct does not satisfy any of these tests, where PeaceHealth issued their vaccination policy for its employees before Governor Brown's order, and where Plaintiff have not alleged that PeaceHealth was coerced to terminate Plaintiffs' employment. *See Zimmerman,* 701 F. Supp. 3d at 1119 (finding same).

In all, because Plaintiff has not plausibly alleged that PeaceHealth was a state actor when it terminated Plaintiff, it cannot be liable to Plaintiffs under § 1983.

### III.    Breach of Contract, Third Party Beneficiary

Plaintiffs assert that the CDC Covid-19 Vaccination Program Provider Agreement is a contract that "clearly and unambiguously create[s] third-party rights." Compl. ¶¶ 596.13. Plaintiffs maintain that Defendants breached that contract.

To establish oneself as a third-party beneficiary, "the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999). When it is a government contract at issue, the standard is even more demanding: "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries and may not enforce the contract absent a clear intent to the contrary." *Id.; see also Restatement (Second) of Contracts* § 313(2), cmt. a (1979) ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.").

Here, the Provider Agreement lacks any "clear intent" to grant Plaintiffs enforceable rights as third-party beneficiaries. *See* Compl. Ex. A. It contains no mention of third-party beneficiaries, and Plaintiffs do not identify any provisions that they allege demonstrate an intent to grant them enforceable rights. *Id.* ¶ 596. Accordingly, the Court finds that Plaintiffs lack standing to assert breach of the Provider Agreement. This claim is dismissed for lack of jurisdiction.

### IV.    Intentional Infliction of Emotional Distress

On thorough review of the Complaint, the Court finds that Plaintiffs offer only conclusory, vague statements as to what any Defendant did to inflict emotional distress. *See* e.g., Compl. ¶¶ 598-601. There is not a single, specific allegation that former Governor Brown, former Director Allen, PeaceHealth, or its executives committed a qualifying act, or that they did anything that plausibly states an intent to cause emotional distress. The Court is not required to accept conclusory allegations as true and dismisses this claim.

## CONCLUSION

A plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For the reasons explained, the Motion to Join, ECF No. 26 is GRANTED. PeaceHealth and State Defendants' Motions to Dismiss, ECF Nos. 12 and 25, are GRANTED. Dismissal with prejudice is appropriate when no amendment can cure a deficient complaint. *Hernandez,* 63 F. App'x 518, 520 (9th Cir. 2016). The Court finds no amendment can cure the allegations here. This case is DISMISSED with prejudice.

It is so ORDERED and DATED this  19th  day of August 2024.


 /s/Ann Aiken                                              
ANN AIKEN

United States District Judge